**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TERRENCE C. LECADRE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HARRISBURG, et al.,<br><br>Defendants. | CIVIL ACTION NO. 1:15-CV-01332<br><br>(KANE, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

Presently before the Court is *pro se* Plaintiff Terrence C. LeCadre's amended complaint seeking damages under 42 U.S.C. §1983 against the City of Harrisburg and Dauphin County for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution arising from his arrest and incarceration on a charge of indirect criminal contempt of a protection from abuse order. For the reasons provided herein, it is respectfully recommended that the amended complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## I. Background

This 42 U.S.C. § 1983 civil rights action was initiated upon the filing of a complaint in this matter by *pro se* Plaintiff Terrence C. LeCadre on July 7, 2015. (Doc. 1). In his complaint, LeCadre claimed that the City of Harrisburg, the Pennsylvania Court of Common Pleas, and the Dauphin County Prison violated his rights under the Fourth and Fourteenth Amendments by arresting and incarcerating him on an indirect criminal contempt charge stemming from a violation of a protection from abuse order entered against him on March 2, 2005 in the Dauphin County Court of Common Pleas. That protective order granted Lorna E. Sotomayor sole physical custody over LeCadre's daughter, and prohibited LeCadre from having any contact with Ms. Sotomayor or his daughter. (Doc. 1–1, at 2). The provisions of the order were

set to expire on September 2, 2006. (Doc. 1–1, at 3). However, according to LeCadre, he never received proper notice of the hearing on the petition for a protective order and thus, was unaware that a final protective order was entered against him.

On June 17, 2005, prior to the expiration of the protection from abuse order, LeCadre attempted to visit his daughter at Ms. Sotomayor's home. When he arrived at Ms. Sotomayor's home, he was confronted by Ms. Sotomayor's boyfriend George Jose Rosario ("Mr. Rosario"), which escalated into a physical altercation. (Doc. 1, at 1). LeCadre apparently left the scene before Harrisburg police arrived and subsequently returned to Florida. As a consequence of having made a brief appearance at Ms. Sotomayor's home in purported violation of the protection from abuse order, LeCadre was charged with indirect criminal contempt, prompting the scheduling of a hearing on the indirect criminal contempt charge, which took place on July 13, 2005. (Doc. 1-1, at 6). However, LeCadre alleged that he was never served with notice of the hearing on the indirect criminal contempt charge and thus, did not appear for the hearing. On July 13, 2005, LeCadre was found guilty in absentia of indirect criminal contempt and sentenced to six months imprisonment in Dauphin County Prison with a fine of $500.00. (Doc. 1–1, at 7).

In May of 2013, shortly after moving back to Harrisburg to reconnect with his children, Lecadre was detained and taken into custody on the indirect criminal contempt charge. On May 3, 2013, the Court of Common Pleas of Dauphin County scheduled a hearing on the indirect criminal contempt charge. However, as represented in LeCadre's complaint, that hearing was cancelled and never rescheduled. (Doc. 1-1, at 10). LeCadre was released from custody on August 12, 2013. (Doc. 1-1, at 13).

On September 28, 2015, the Court, in conducting its statutorily-mandated screening

review of LeCadre's complaint, dismissed the complaint, but granted LeCadre leave to file an amended complaint only with respect to his municipal liability claims against the City of Harrisburg and Dauphin County.[1] On October 26, 2016, LeCadre filed a four-page amended complaint together with forty-seven (47) pages of supporting exhibits, many of which were initially attached to LeCadre's original complaint. (Doc. 9) . The crux of LeCadre's amended complaint is that his subsequent incarceration on a charge of indirect criminal contempt of the protection from abuse order was improper because he never received notice of the final protection from abuse order. (Doc. 9, at 1). Along that vein, he alleges that Judge Joseph H. Kleinfelter committed judicial misconduct by misrepresenting in the final protection from abuse order that LeCadre was properly served and provided notice of the hearing on the petition for a protection from abuse order in accordance with Rule 1930.4 of the Pennsylvania Rules of Civil Procedure. (Doc. 9, at 1). LeCadre further alleges that this judge conspired with former Harrisburg mayor Stephen F. Reed to deprive LeCadre of his rights. (Doc. 9, at 1).

The matter is now before the Court pursuant to its statutory obligation under 28 U.S.C. § 1915(e)(2) to screen the amended complaint and dismiss it if it fails to state a claim upon which relief can be granted.

## II. SECTION 1915 STANDARD

Under 28 U.S.C. § 1915, the Court is obligated, prior to service of process, to screen a civil complaint brought *in forma pauperis*. The Court must dismiss the complaint if it fails to state

[1] Specifically, the Court dismissed the claims against the Dauphin Court of Common Pleas on sovereign immunity grounds, construed the claims against the Dauphin County Prison as claims against the municipality itself, and dismissed the municipal liability claims against Dauphin County and the City of Harrisburg with leave to amend. (Doc. 7).

a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[2] In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in

---

[2] 28 U.S.C. § 1915(e)(2) also requires the Court to screen "at any time" an amended complaint and dismiss it if it fails to state a claim upon which relief can be granted.

order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Finally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## III. DISCUSSION

### A. FALSE ARREST & FALSE IMPRISONMENT CLAIMS

Insofar as LeCadre claims that his arrest and imprisonment on indirect criminal contempt charges stemming from his violation of a protection from abuse order somehow runs afoul of the Fourth Amendment, he has failed to state a claim for relief.

It appears from the exhibits attached to LeCadre's amended complaint that a warrant for his arrest was issued due to his purported violation of the protection from abuse order. (Doc. 9-1, at 10).[3] An arrest made without probable cause is a constitutional violation that may be redressed under § 1983. In order to make out a false arrest claim, a plaintiff must demonstrate: (1) that there was an arrest; and (2) that the arrest was made in the absence of probable cause. *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir. 1988). Probable cause does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams,* 407 U.S. 143, 149 (1972). Rather, probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Johnson v. Campbell,* 332 F.3d 199, 211 (3d Cir. 2003) (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)); *see also Thacker v. City of Columbus,* 328 F.3d 244, 256 (6th Cir. 2003) ("Thus, for probable cause to arrest [plaintiff], the officers would not have to have proof of each element of a domestic

---

[3] Notably, LeCadre does not identify as a defendant the officer who secured a warrant for his arrest on the informal criminal contempt charge or the officer who arrested him in May of 2013 based upon the existence of that warrant. Even assuming, *arguendo*, that LeCadre named the proper defendant in this action, he has nevertheless failed to make out a claim of false arrest, as further described herein.

violence offense, but would have to believe that a probability existed that he committed the offense.").Where, as here, the arrest was made pursuant to a warrant, a plaintiff must plead facts demonstrating that (1) the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause."[4] *Wilson v. Russo,* 212 F.3d 781, 786–87 (3d Cir. 2000) (internal quotation marks and citations omitted); *Mitchell v. Obenski*, 134 F. App'x 548, 551 (3d Cir. 2005) (noting that officers are entitled to a "presumption of reasonableness that can only be overcome by 'allegations of deliberate falsehood or of reckless disregard for the truth,' which must be accompanied by specific proof," in circumstances where a magisterial district judge signs a warrant). Omissions are made with reckless disregard "if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Wilson,* 212 F.3d at 788 (internal quotation marks and citations omitted). An officer is not required to "relate the entire history of events leading up to a warrant application with every potentially evocative detail." *Wilson*, 212 F.3d at 787. In determining the alleged materiality of an assertion or omission, the court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson,* 212 F.3d at 789.

Here, LeCadre does not assert that the affidavit of probable cause, on its face, did not support a finding of probable cause. On the contrary, LeCadre admits in his amended

---

[4] In this context, however, an arrest for a violation of Paragraphs 1 through 7 of the final protection from abuse order may be made without a warrant, based solely upon probable cause, whether or not the violation is committed in the presence of the police. 23 Pa. Cons. Stat. § 6113(a).

complaint that he engaged in a physical altercation with Mr. Rosario on June 17, 2005, which supports the officer's representations in the affidavit of probable cause attached to the amended complaint that LeCadre violated the protection from abuse order by coming to Ms. Sotomayor's home "and by using physical force at the same." (Doc. 9, at 3; Doc. 9-1, at 9). Rather, LeCadre merely contends that he was not provided with sufficient notice of the protection from abuse order, which resulted in an unknowing violation of that order. (Doc. 17, at 2). Even when considering this sole allegation in the light most favorable to LeCadre, it is clear that the amended complaint contains insufficient facts to state a plausible claim, as LeCadre offers no support that the officer who procured the arrest warrant omitted or misrepresented material facts in the probable cause affidavit. As LeCadre fails to support a reasonable inference that his arrest was initiated without probable cause, it is respectfully recommended that the false arrest claim be dismissed.

B. JUDICIAL IMMUNITY

Although LeCadre does not name Judge Joseph H. Kleinfelter, the magisterial district judge who entered the final protection from abuse order, as a defendant in the caption of the amended complaint, LeCadre alleges in the body of the amended complaint that Judge Kleinfelter engaged in "illegal and judicial misconduct [by] . . . commit[ing] perjury by stating that Plaintiff was served" notice of the protection from abuse order. (Doc. 9, at 1). To the extent LeCadre's amended complaint could be construed as asserting claims against this judge, it is clear that he would be entitled to absolute judicial immunity.

It is well established that "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). Judicial immunity may be overcome in only two

circumstances. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (citations omitted). Judicial immunity extends only to judicial acts, not those acts that are administrative, executive, or legislative in nature. *Stump v. Sparkman,* 435 U.S. 349, 359 (1978). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12 (citations omitted). A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . .'" *Stump*, 435 U.S. at 356–57 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)); *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967). Moreover, judicial immunity exists even where it is alleged that the judge is acting as part of a conspiracy. *Dennis v. Sparks,* 449 U.S. 24, 27 (1980).

Neither exception can be argued credibly here. All of the allegations pertaining to Judge Kleinfelter, even those allegations of a conspiracy, concern adjudicatory acts taken with respect to this judge's exercise of jurisdiction over the protection from abuse proceedings. *See Stump*, 435 U.S. at 356–57; *Azubuko*, 443 F.3d at 303; *Stankowski v. Farley*, 487 F. Supp. 2d 543, 551 (M.D. Pa. 2007) (finding judge entitled to absolute immunity from suit even though conduct alleged against judge included conspiracy to convince plaintiff to accept an unjust sentence because it occurred in context of his duties as a judge). Indeed, Pennsylvania law provides that unless exclusive jurisdiction is vested in another court by statute or by rule, "the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings . . . ." 42 Pa. Cons. Stat. § 931(a). This broad grant of jurisdiction extends to protection from abuse proceedings. *See* 23 Pa. Cons. Stat. § 6103(a) ("The court shall have jurisdiction over all proceedings under [Chapter 61. Protection from Abuse]."); 23 Pa. Cons. Stat. § 6114(a.1) ("A

court shall have jurisdiction over indirect criminal contempt charges for violation of a protection order issued pursuant to this chapter . . . ."). Accordingly, judicial immunity would foreclose any claims for damages against Judge Joseph H. Kleinfelter. *Brookhart v. Rohr,* 385 F. App'x. 67, 70 (3d Cir. 2010) ("Judges are absolutely immunized from a suit for money damages arising from their judicial acts.") (citations omitted).

C. *MONELL* LIABILITY CLAIMS

LeCadre has asserted federal civil rights claims under 42 U.S.C. § 1983 against the City of Harrisburg and Dauphin County arising from his arrest and incarceration for an indirect criminal contempt charge on a protection from abuse order. "On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Monell*, 436 U.S. at 690. A municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. Thus, to state a § 1983 claim against a municipality, a plaintiff must allege a constitutional injury that was caused when the municipality took action pursuant to a custom or policy. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992); *see also Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) ("A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy

and the injury suffered."). Regardless of any policy or practice it may have adopted, however, municipal liability under *Monell* requires an underlying constitutional violation. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989).

Here, despite affording LeCadre an opportunity to correct the pleading deficiencies contained within the initial complaint, LeCadre has again failed to identify any policy or custom adopted by the City of Harrisburg or Dauphin County that caused the purported constitutional deprivations in accordance with the Court's directives.[5] More significantly, it appears that the wrongful conduct complained of pertains to actions taken by judicial officers presiding over LeCadre's protection from abuse and contempt proceedings. These allegations, however, arise out of judicial decisions made pursuant to state law, rather than any municipal policy or custom of the City of Harrisburg or Dauphin County. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) ("[A] municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal officer or lawmaker."); *Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007); *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1189–90 (10th Cir. 2003); *Johnson v. Turner*, 125 F.3d 324, 335–36 (6th Cir. 1997); *Eggar v. City of Livingston*, 40 F.3d 312, 314–15 (9th Cir. 1994); *see also Jefferson v. City of Hazlehurst*, 936 F. Supp. 382, 390–91 (S.D. Miss. 1995) (a finding that a judge is protected by judicial immunity precludes municipal liability for his or her judicial acts). As this Court has previously held, a Pennsylvania county government cannot

---

[5] In fact, the body of the amended complaint makes no reference to these Defendants. A civil rights complainant must state the conduct, place, and persons responsible for alleged civil rights violations in order to give "fair notice of what [his] claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pa. State Police,* 570 F.2d 86, 89 (3d Cir. 1978)).

be held vicariously liable for the judicial acts of a magisterial district judge — a state actor over whom the county has no supervisory control or authority. *See Wallace v. Powell*, Nos. 3:09-cv-286, 3:09-cv-291, 3:09-cv-357, 3:09-cv-0630, 2009 WL 6850318, at *12–*16 (M.D. Pa. Nov. 20, 2009); *see also Hamay v. Washington Cnty.*, 435 A.2d 606, 608–09 (Pa. Super. Ct. 1981) ("The [common pleas] judge . . . is not an agent or employee of the county. The judge is an employee of the state, an officer of the Commonwealth of Pennsylvania. . . . The county has no power to control the judge's actions.").[6] Accordingly, LeCadre's *Monell* claims against the City of Harrisburg and Dauphin County pertaining to his arrest and incarceration for having violated a protection from abuse order must be dismissed for failure to state a claim.

D. LEAVE TO AMEND

The Third Circuit has acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir.2000). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (citing *Lake*, 232 F.3d at 373 ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint.")). Here, this Court has previously granted LeCadre leave to file an amended complaint, and even went so far as to inform LeCadre as to what is required to properly plead *Monell* liability. Despite the Court's

---

[6] To the extent that LeCadre premises municipal liability on allegations that unnamed municipal officers falsely arrested him in violation of the Fourth Amendment, such a claim falls short, as LeCadre has failed to establish an underlying Fourth Amendment violation that could be imputed to the municipality. *See Heller, 475 U.S. at 799* ("[I]f the [municipal employees] inflicted no constitutional injury on [the plaintiff], it is inconceivable that [the municipality] could be liable . . . .").

alerting LeCadre to the deficiencies in his pleadings and granting him leave to amend, however, LeCadre failed to cure the complaint's pleading deficiencies. Thus, the Court finds that permitting LeCadre leave to file a third complaint would be futile. Accordingly, it is respectfully recommended that LeCadre not be granted any further leave to amend his complaint.

## IV. RECOMMENDATION

Based upon the foregoing, it is recommended that Plaintiff's amended complaint (Doc. 9), be dismissed and that the Clerk be directed to close this case.

**BY THE COURT:**

**Dated: April 20, 2016**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

TERRENCE C. LECADRE,

Plaintiff,

v.

CITY OF HARRISBURG, et al.,

Defendants.

CIVIL ACTION NO. 1:15-CV-01332

(KANE, J.)
(MEHALCHICK, M.J.)

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **April 20, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: April 20, 2016**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**